IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIMOTHY L. YOUNGBLOOD, #B02004, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH SOURCES, INC, et al., <br><br> Defendants. | Case No. 3:18-cv-01723-SMY |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on Defendants Wexford Health Sources, Inc. and Dr. Vipin Shah's Motion for Summary Judgment (Doc. 171), Defendant Faiyaz Ahmed, MD's Motion for Summary Judgment (Doc. 173), Defendants Sherry Benton, John Baldwin, and Kevin Kink's Motion for Summary Judgment (Doc. 181),[1] and Defendant Faiyaz Ahmed, MD's Supplemental Motion for Summary Judgment (Doc. 186). Plaintiff filed a consolidated response to the motions (Doc. 198). For the following reasons, the motions are **GRANTED**.

## BACKGROUND

Plaintiff Timothy L. Youngblood, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Youngblood was diagnosed with an inguinal hernia located on the right side of his groin in 2013 and an inguinal hernia located on the left side of his groin in 2016. While he was incarcerated at Menard Correctional Center, the right-sided hernia became incarcerated,

---

[1] Dee Dee Brookhart, the Acting Warden of Lawrence Correctional Center, is included in the motion based on Plaintiff's request for permanent injunctive relief. The motion suggests that Brookhart be substituted for Kevin Kink in his official capacity, who was the Warden of Lawrence Correctional Center at the time Plaintiff filed his Complaint. Based on the Court's rulings on the motions for summary judgment, a substitution is not necessary.

necessitating emergency surgery in April 2017. Youngblood was transferred from Menard to Lawrence Correctional Center in August 2017, and did not have surgery for the left-sided hernia until October 2018.

Following preliminary review of the Complaint and two subsequent Amended Complaints, Plaintiff proceeds on the following claims:

> Count 1: Eighth Amendment claim against Defendants for exhibiting deliberate indifference to Plaintiff's serious medical needs when they delayed or denied treatment for his inguinal hernia.
>
> Count 2: Illinois state law claim for the intentional infliction of emotional distress against Defendants for delaying or denying treatment for Plaintiff's inguinal hernia.

(Docs. 5, 35, 54).

Youngblood claims that while he was incarcerated at Lawrence, Dr. Faiyaz Ahmed and Dr. Vipin Shah exhibited deliberate indifference to his serious medical condition by denying and/or delaying surgical repair for his left-sided hernia. He contends the deficient medical care resulted from a policy, custom, or widespread practice espoused by Wexford Health Sources, Inc., which does not consider the patient's level of pain when assessing the need for surgery of a reducible inguinal hernia. He also contends that IDOC Director John Baldwin, Lawrence Warden Kevin Kink, and Administrative Review Board member Sherry Benton are liable for the constitutionally deficient medical care because they knew about it and failed to intervene on his behalf. Finally, he alleges deliberate difference by Baldwin based on a policy and/or procedure regarding how grievances are processed and that Baldwin instituted a policy regarding denial of treatment for his hernia.

# FACTS[2]

Plaintiff Timothy Youngblood is, and was at all times relevant, incarcerated within the Illinois Department of Corrections ("IDOC"). He transferred to Lawrence Correctional Center in early August 2017. At all times relevant, Wexford Health Sources, Inc. had a contract with IDOC to provide medical services to inmates at IDOC facilities, including Lawrence. Dr. Ahmed and Dr. Shah provided medical treatment for Plaintiff at Lawrence.

## Defendants Wexford Health Sources, Inc. and Dr. Vipin Shah's Motion for Summary Judgment

On January 3, 2017, while Youngblood was incarcerated at Menard Correctional Center, he was sent to Lincoln Surgical Associates, LTD to be seen by Dr. Douglas Aach for a surgery consultation for a right inguinal hernia. Dr. Aach noted that Youngblood had a large right inguinal hernia that was partially reducible and that there was no definite left inguinal hernia. Dr. Aach recommended right inguinal hernia repair with mesh. Dr. Aach recommended to leave the left side alone, but indicated that a left inguinal hernia may develop later. The right inguinal hernia was not noted as incarcerated or strangulated. Dr. Aach wrote a letter to Wexford physician, Dr. Trost, discussing the arrangements for a future left inguinal hernia repair. There was no indication of the left inguinal hernia requiring emergent care or surgery. Youngblood subsequently had surgery on the right hernia on April 5, 2017.

Youngblood was transferred from Menard to Lawrence in early August 2017. He saw Dr. Ahmed on August 11, 2017, who noted that Youngblood's left inguinal hernia was reducible and that Youngblood wanted surgery. Dr. Ahmed ordered a hernia belt for treatment and submitted a request for surgical evaluation of Youngblood's left inguinal hernia on August 17, 2017. However, it was determined by Dr. Ritz that the left inguinal hernia was reducible and did not

---

[2] The following facts are undisputed unless otherwise noted.

require surgical evaluation at the time, but Youngblood could be re-presented as needed; surgery for a reducible hernia without significant other symptoms would be an elective surgery.[3]

Youngblood was provided a medical permit for a hernia belt on August 29, 2017 that was valid until February 29, 2018. According to Defendants, it is appropriate to use a hernia belt when the hernia is reducible, and a hernia belt works as long as it is actually used by the patient. Youngblood testified that the hernia belt was inadequate, did not stop his pain, and exacerbated – when his hernia protruded, it bumped into the belt resulting in increased pain. Youngblood did not inform any medical provider that the hernia belt was not keeping his hernia in.

On September 27, 2017, Youngblood presented to the medical unit indicating that he wanted surgery for his left inguinal hernia, which was still reducible. Youngblood did not present with his hernia belt at the time of the appointment and was encouraged to use the belt.

Youngblood was seen in the medical unit by Dr. Ahmed on March 9, 2018. He stated he wanted surgery, but refused to show Dr. Ahmed the hernia for examination. On June 15, 2018, it was noted during a physical that Youngblood's left hernia was "small."

Youngblood was first seen by Dr. Shah on June 25, 2018. While Dr. Shah asserts that Youngblood did not express any concerns regarding his hernia during the appointment, Youngblood claims that he did report concerns regarding his hernia at that time.[4]

Youngblood was seen by a nurse on July 5, 2018 and complained about increased pain with respect to his left hernia. The nurse made a referral to an on-site nurse practitioner or physician for evaluation. Youngblood was evaluated the next day by a nurse practitioner who

---

[3] Plaintiff denies that his surgery presented "without significant other symptoms" and contends that his hernia presented with significant pain that affected his activities of daily living. (Doc. 198, p. 4). He does not cite to any testimony, affidavit, or other evidence in the record to support his contention.

[4] Youngblood testified that he saw Dr. Shah for loss of consciousness, vision loss, bumps, and his hernia. (Doc. 175-1, p.7).

noted his complaints that his left inguinal hernia was getting larger and more painful. The nurse practitioner noted that the hernia was still reducible and submitted a non-urgent referral request for general surgery for left inguinal hernia repair.

Youngblood was seen by Dr. Ahmed on July 10, 2019 and complained about his left inguinal hernia. Dr. Ahmed noted the hernia was reducible, less than golf ball size, and that Youngblood appeared to be in no distress. He also noted that Youngblood admitted to not using the hernia belt as prescribed. Around this time, Youngblood began experiencing more difficulty with pushing the hernia back in. Dr. Ahmed submitted a referral for hernia repair on July 10, 2018.

Youngblood was seen by Dr. Shah for a second time on July 12, 2018. The medical records indicate that Youngblood saw Dr. Shah for a knee injury on that date. (Doc. 175-1, p. 11). According to Dr. Shah, Youngblood did not discuss any issues he had regarding his hernia during this appointment. Youngblood contends that he did discuss his hernia pain at that time and told Dr. Shah that he wanted surgery.

A general surgery evaluation was approved on July 30, 2018 during a collegial review between Dr. Ritz and Dr. Ahmed. The surgical consult was scheduled for September 17, 2018. During a September 3, 2018 appointment with Dr. Shah, Youngblood refused to cooperate and insisted that Dr. Shah write certain things down for him to provide his attorneys.

Youngblood was seen at the Lawrence County Memorial Hospital on September 24, 2018 for consultation for the repair of his left inguinal hernia. A referral request for left inguinal hernia repair surgery was reviewed and approved on September 27, 2018. Youngblood underwent surgery for his left inguinal hernia on October 1, 2018.

After the surgery, Dr. Ahmed ordered Naproxen, twice a day as needed for two weeks,

along with an ice pack for the groin area. He prescribed Naproxen for an additional two weeks on October 15, 2018. Youngblood was seen at the Lawrence County Memorial Hospital for a follow-up appointment on October 15, 2018. According to the medical records, he did not report pain, numbness, nausea, vomiting, or problems voiding or urinating. The wound was healing well and Youngblood was recovering well. He was instructed that there was no need to return to the clinic unless otherwise necessary. Youngblood did not seek mental health professionals for any issue.

**Defendant Faiyaz Ahmed, MD's Motion for Summary Judgment**

During reception screening at Lawrence on August 2, 2017, Youngblood self-reported a current complaint of hernia. He was not taking pain medications for his left hernia at that time. A nurse reviewed Youngblood's chart on August 4, 2017 and scheduled him to see a doctor. Youngblood saw Dr. Ahmed on August 11, 2107. He told him that he had surgery for a right inguinal hernia and needed surgery for a left inguinal hernia. Dr. Ahmed's assessment following examination was a reducible left inguinal hernia, for which he issued a hernia belt. Dr. Ahmed also submitted a referral request to Wexford for Youngblood to be evaluated for hernia surgery. Dr. Stephen Ritz, a Wexford Utilization Management physician, reviewed Dr. Ahmed's request and denied it. Dr. Ahmed and Dr. Ritz agreed to re-present Youngblood as needed. Youngblood was issued a hernia belt and a permit for the hernia belt that was valid from August 29, 2017 to February 28, 2018.

On September 27, 2017, Youngblood complained to Dr. Ahmed that his left inguinal hernia was "fist sized" and painful and requested surgery. On examination, Dr. Ahmed found that the hernia was still reducible – his assessment remained unchanged. He noted that although Youngblood had a hernia belt, he was not wearing it. He encouraged Youngblood to wear his

hernia belt and instructed him to return to the clinic as needed if his hernia was not reducible.[5]

Youngblood next saw Dr. Ahmed on March 9, 2018, at which time he reported dizziness, vertigo, and a knee injury.  He also reported that his left inguinal hernia was "fist sized" and painful, and again requested surgery.  Dr. Ahmed performed an examination for Youngblood's other medical complaints but Youngblood refused to show Dr. Ahmed his hernia.  Dr. Ahmed referred Youngblood to optometry and ordered some lab tests.

On July 5, 2018, Youngblood reported to a nurse that his hernia was larger and more painful.  The nurse put Youngblood in line for the next available visit with a nurse practitioner or doctor.  Youngblood saw Nurse Practitioner Stover the next day. He complained that his ears were flushed but he was still having trouble hearing, that his right knee and thigh were still hurting him with walking, and that he had blurred vision and vision loss. He reported that his hernia was reducible but painful.[6]  He also reported that he was less active due to pain and that it hurt to walk, especially upstairs. Stover made referrals to audiology, general surgery for evaluation of left inguinal hernia repair, Dr. Shah for neurological symptoms, and ophthalmology for vision changes.

Youngblood woke up on July 10, 2018 and could not push his hernia back in as easily as before.  He had to force it back in and had to move it a certain way to push it back in. He saw Dr. Ahmed that day and complained of hernia pain and an incident of vision loss.  He stated he wanted a "brain biopsy" and hernia surgery.  On examination, Dr. Ahmed found that Youngblood had a less than golf ball size reducible hernia. He noted that Youngblood was in no distress, but was

---

[5] Youngblood testified that after his permit for a hernia belt expired on February 28, 2018, he threw his hernia belt away and did not ask for a new one. He does not recall ever telling a medical provider that his hernia belt failed to keep his protruding tissue in place. (Doc. 175-1, pp. 12, 23, 24).

[6] Youngblood denies he reported that his hernia was reducible at that time because he lacks the medical knowledge or expertise to make this assessment.

repeating "I need brain biopsy." Dr. Ahmed referred Youngblood to optometry for his reported vision loss and for evaluation for hernia surgery.

Dr. Ahmed presented Youngblood in collegial review with Dr. Neil Fisher, a Wexford Utilization Management physician, for an audiology evaluation and evaluation for hernia surgery on July 12, 2018. Dr. Fisher did not agree to the requested services. Dr. Fisher and Dr. Ahmed agreed on an alternative treatment plan of re-evaluating Youngblood for the reported vision loss, completing a neurological examination onsite, and re-presenting Youngblood in three weeks. Dr. Ahmed re-discussed Youngblood's case with Dr. Ritz in collegial review on July 26, 2018, at which time Youngblood was approved for evaluation for hernia surgery.

On August 17, 2018, Youngblood reported to a nurse that he had hernia pain which he rated 10/10, that his hernia continued to protrude, and that he needed emergency surgery. The nurse educated Youngblood about his upcoming appointment for an evaluation for hernia surgery.

On September 2, 2018, Youngblood reported increased hernia pain to a nurse. He saw Dr. Shah the next day.

Youngblood saw Dr. Robert Lynch at Lawrence County Memorial Hospital for evaluation for hernia surgery on September 24, 2018. Dr. Lynch found a large incarcerated left inguinal hernia and recommended hernia repair.

On September 26, 2018, Dr. Ahmed recorded in Youngblood's medical records that he had been seen by Dr. Lynch and Dr. Lynch's findings and recommendations, and submitted a referral request to Wexford for Youngblood to have hernia surgery. Dr. Ritz approved the request on September 27, 2018. Youngblood underwent left inguinal hernia repair on October 1, 2018. Dr. Lynch noted that Youngblood was stable in his "Report of Referral."

Dr. Ahmed saw Youngblood on his return from medical furlough for his hernia surgery.

Youngblood requested pain meds ("strongest one"). Dr. Ahmed reviewed Dr. Lynch's "Physician's Orders," and incorporated them into his plan: 1) ice to groin as needed for two weeks; 2) refer for follow-up with Dr. Lynch in two weeks; 3) diet as tolerated; 4) no lifting greater than 10 pounds for six weeks; 5) may shower as needed; 6) Naprosyn 500 mg twice a day as needed for two weeks; and 7) return to check in one week.[7] Items 1, 2, 3, 4, and 5 of Dr. Ahmed's plan were taken from Dr. Lynch's "Physician's Orders." Dr. Lynch's "Physician's Orders" did not include any pain medication for Youngblood. Dr. Ahmed wrote his note on a single page that is divided into three columns. The left-hand column has the heading "Date/Time," the center column has the heading "Subjective, Objective, Assessment," and the right-hand column has the heading "Plans." Because Dr. Ahmed could not list all seven items of his plan in the "Plans" column, he listed item 6: Naprosyn, and item 7: return to check one week in the "Subjective, Objective, Assessment" column. Dr. Ahmed asserts that did not intend to prevent Youngblood from receiving Naprosyn by writing items 6 and 7 in the "Subjective, Objective, Assessment" column.

Youngblood saw Dr. Lynch for a post-op visit on October 15, 2018. Dr. Lynch's "Report of Referral" states that Youngblood "[d]oes not need to return." Dr. Ahmed saw Youngblood that same day upon his return from his follow-up visit with Dr. Lynch. Youngblood reported that he had been in pain since his October 1, 2018 surgery and needed pain medication. Dr. Ahmed prescribed Naprosyn 500 mg twice a day as needed for two weeks.

### Defendants Sherry Benton, John Baldwin, and Kevin Kink's Motion for Summary Judgment[8]

The entirety of Youngblood's interaction with Defendants Kink, Benton, and Baldwin was through grievances and other correspondence sent to the ARB about grievances. Kevin Kink was

---

[7] Naprosyn (naproxen) is a nonsteroidal anti-inflammatory drug used to treat pain.
[8] The IDOC Defendants also incorporate the statements of fact submitted by Defendants Wexford, Shah, and Vipin in support of their motions.

the Warden of Lawrence Correctional Center from approximately February 2018 to December 2018. He is not a licensed medical professional, did not provide direct treatment to offenders, and relied on the medical expertise of the healthcare unit staff. Kink often relied on his signatories to review emergency grievances and grievance officer decisions. The signatories would note their initials after his name. If a grievance was denied as non-emergent, the offender was directed to submit the grievance in the normal manner for processing.

John Baldwin was the Acting Director of IDOC from August 2015 until May 23, 2019. He is not a medical professional and cannot provide a diagnosis or prescribe treatment for offenders. Baldwin supervised the Administrative Review Board ("ARB"). However, he generally relied on his signatories to review and approve/disprove ARB decisions, which is evidenced by initials after his signed name.

Sherry Benton is the ARB Chairperson and has been employed as such since June 2003. She is not a trained physician and cannot determine an offender's plan of care, including what treatment is prescribed. Benton reviews all available information and requests additional information if necessary to make a final determination as to the merits of a grievance.

**Youngblood I**

Youngblood filed a previous lawsuit regarding his two inguinal hernias and policies/procedures concerning hernia repair against John Baldwin, the Acting Warden of Menard Correctional Center (Anthony Wills), Dr. John Trost, and Wexford Health Sources, Inc. in *Youngblood v. IDOC, et al.*, No. 3:17-cv-807-MAB, 2020 WL 5816753 (S.D. Ill. Sept. 30, 2020), *affirmed on appeal* No. 20-2968, 2021 WL 4272059 (7th Cir. Sept. 21, 2021) ("*Youngblood I*"). He alleged that the defendants denied and/or delayed adequate treatment and surgery for two inguinal hernias while incarcerated at Graham Correctional Center, Shawnee Correctional Center,

Pontiac Correctional Center, Menard Correctional Center, and Lawrence Correctional Center.

The record before the court contained evidence regarding Youngblood's medical treatment for his hernias from the time he entered into IDOC custody in 2014 until his second hernia repair on October 1, 2018. In ruling on the Defendants' motions for summary judgment, the court concluded that Youngblood "failed to demonstrate a question of fact as to whether any of the clinicians at Graham, Shawnee, Pontiac, Menard, and Lawrence, or the physicians at Wexford's headquarters who participated in collegial review, were individually liable for deliberate indifference." *Youngblood*, 2020 WL 5816753, at *10. The court further found that "Youngblood has not put forth evidence sufficient for a reasonable jury to conclude that the clinicians' treatment decisions were made pursuant to the alleged widespread practice or that the widespread practice even existed." *Id.* at *11. The Seventh Circuit affirmed the district court's rulings on appeal. *Youngblood*, 2021 WL 4272059, at *2.

## DISCUSSION

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party must set forth specific facts in the record showing that genuine issues of fact exist precluding summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter, and the court may not "choose between competing inferences or balance the relative weight of conflicting evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "It must view all the evidence in the record in the light most

favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 836 (7th Cir. 2014).

Defendants argue they are they entitled to summary judgment both based on the undisputed material facts and because Plaintiff's claims are barred by claim and/or issue preclusion based on rulings addressing the same issues in *Youngblood v. IDOC, et al*., No. 3:17-cv-807-MAB, 2020 WL 5816753 (S.D. Ill. Sept. 30, 2020), *affirmed on appeal* No. 20-2968, 2021 WL 4272059 (7th Cir. Sept. 21, 2021) ("*Youngblood I*").

### Res Judicata/Collateral Estoppel – Count 1 – Pre-Surgical Treatment

Under the doctrine of *res judicata* (claim preclusion), "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor*, 553 U.S. at 892 (internal quotation marks and citation omitted). *Res judicata* applies if there is: "(1) identity of the claim, (2) identity of parties, which includes those in 'privity' with the original parties, and (3) a final judgment on the merits." *Cannon v. Burge*, 752 F.3d 1079, 1101 (7th Cir. 2014).

Similarly, collateral estoppel (issue preclusion), "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892. Collateral estoppel applies if (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *Havoco of Am., Ltd. v. Freeman, Atkins & Coleman, Ltd*., 58 F.3d 303, 307 (7th Cir. 1995). Thus, an action brought under 42 U.S.C. § 1983 asserting an Eighth Amendment violation regarding medical care may be precluded when the prisoner brings the same claim based

on the same operative facts as in a previous lawsuit. *See e.g. Fort-Greer v. Daley*, 228 F.App'x 602 (7th Cir. 2007).

Youngblood litigated the same issues and the same claim against Wexford in *Youngblood I* as pertains to the claim in Count 1 in this case. Although *Youngblood I* was filed before some of the medical care at issue in this case, that same treatment was brought before the Court because of Youngblood's request for permanent injunctive relief. It is clear from the pleadings in *Youngblood I*, Judge Beatty's Summary Judgment Order, and the Seventh Circuit's Order on appeal that the same parties (Youngblood and Wexford), the same facts, and the same claim were presented and a final determination was made. Specifically, Judge Beatty held, "Youngblood's theory of *Monell* liability against Wexford *depends* on the individual liability of the practitioners" and Youngblood "failed to demonstrate a question of fact as to whether any of the clinicians at Graham, Shawnee, Pontiac, Menard, **and Lawrence**, or the physicians at Wexford's headquarters who participated in collegial review, were individually liable for deliberate indifference." *Youngblood*, 2020 WL 5816753, at *10. (emphasis added). As such, Youngblood's claim in Count 1 against Wexford is precluded by both res judicata and collateral estoppel.

Judge Beatty also found that "Youngblood ha[d] not put forth evidence sufficient for a reasonable jury to conclude that the clinicians' treatment decisions were made pursuant to the alleged widespread practice or that the widespread practice even existed." *Youngblood I* at *11. The issue and claim regarding Wexford's alleged widespread custom and practice of denying surgical repair of reducible hernias was fully litigated and determined through appellate review. Moreover, the issue of whether the physicians treating Youngblood at Lawrence were deliberately indifferent to his serious medical needs relating to surgery for his left inguinal hernia was squarely addressed and finally determined as part and parcel of the claim against Wexford. Consequently,

issue preclusion also applies to Youngblood's deliberate indifference claim in Count 1 against Dr. Ahmed and Dr. Shah.

Accordingly, Wexford, Dr. Ahmed, and Dr. Shah are entitled to summary judgment on the claim in Count 1 that they delayed or denied treatment for Youngblood's left inguinal hernia up to the point that he underwent hernia surgery on October 1, 2018.

### Count 1 – Post-Surgical Treatment

The Eighth Amendment's proscription against cruel and unusual punishment imposes an obligation on states "to provide adequate medical care to incarcerated individuals." *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012). Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To succeed on a claim for deliberate indifference, a prisoner must demonstrate that he suffered from an objectively serious medical condition, and the defendant(s) acted with deliberate indifference to his medical needs. *Id*. The fact that Youngblood suffered from an objectively serious medical condition is not in dispute. The dispute centers around whether Defendants were deliberately indifferent to that condition and Youngblood's medical needs.

"A prison official is deliberately indifferent only if he 'knows of and disregards an excessive risk to inmate health or safety.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). In other words, "[t]he defendant must know of facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Whiting*, 839 F.3d at 662 (quoting *Farmer*, 511 U.S. at 837). "This subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway*, 700 F.3d at 1073 (citation omitted).

"A jury can infer deliberate indifference on the basis of a physician's treatment decision [when] the decision [is] so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (internal citation omitted). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that "no minimally competent professional would have so responded under those circumstances." *Id.* A defendant's inadvertent error, negligence, misdiagnosis, or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). A prisoner's dissatisfaction with a particular course of treatment does not give rise to an Eighth Amendment claim unless the medical treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" the prisoner's condition. *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007).

### Dr. Ahmed

Although the Court finds issue preclusion applies to the pre-surgery issues, Youngblood also alleges deliberate indifference with regard to Dr. Ahmed's post-surgery treatment of his left inguinal hernia (October 1, 2018 to October 15, 2018). After the surgery, Dr. Ahmed prescribed pain medication for Youngblood, even though the surgeon had not recommended any pain medication. While there was an issue with Youngblood receiving the pain medication, that omission is not attributable to Dr. Ahmed. When Youngblood advised Dr. Ahmed that he had not received the pain medication, Dr. Ahmed again prescribed pain medication for him. Without any evidence that Dr. Ahmed deliberately or even recklessly delayed the distribution of his pain medication, Youngblood cannot establish a deliberate indifference claim against him. *See e.g.*

*Burton v. Downey*, 805 F.3d 776 (7th Cir. 2015).

Accordingly, Dr. Ahmed is entitled to summary judgment in his favor on Count 1 with respect to his post-surgical care.

### Count 1 – Defendants Kink, Benton, and Baldwin

As there was no deliberate indifference on the part of the medical providers, it is axiomatic there was no deliberate indifference by the non-medical prison officials who reviewed Youngblood's complaints about his medical treatment. To the extent that Youngblood challenges the efficacy of the grievance process and alleges deliberate difference by Baldwin based on a policy and/or procedure regarding how grievances are processed, there is no evidence in the record that the grievance process was not conducted in accordance with the Illinois Administrative Code. Finally, although Youngblood alleges Baldwin instituted a policy regarding denial of treatment for Youngblood's hernia, there is no evidence in the record that such policy exists or that Baldwin instituted such a policy.

For these reasons, Defendants Kink, Benton and Baldwin are entitled to summary judgment in their favor on Count 1.

### Qualified Immunity

Because the Court finds that the evidence does not support a deliberate indifference claim against any defendant, it need not address the issue of qualified immunity

### Count 2 – Intentional Infliction of Emotional Distress

To prevail on a claim for intentional infliction of emotional distress under Illinois law, Youngblood must prove that (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that the conduct would cause severe emotional distress; and (3) the defendants'

conduct in fact caused severe emotional distress. *McGreal v. Village Orland Park*, 850 F.3d 308 (7th Cir. 2017). "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Id.* (internal citations omitted).

Based on the evidence in the record, no reasonable jury could conclude that any defendant engaged in extreme and outrageous conduct. There is no evidence that that any defendant acted with intent or knowledge that his or her conduct would result in severe emotional distress; nor is there any evidence that Youngblood suffered severe emotional distress. Accordingly, Defendants are entitled to summary judgment on Count 2.

## CONCLUSION

For the foregoing reasons, Defendants Wexford Health Sources, Inc. and Dr. Vipin Shah's Motion for Summary Judgment (Doc. 171), Defendant Faiyaz Ahmed, MD's Motion for Summary Judgment (Doc. 173), Defendants Sherry Benton, John Baldwin, and Kevin Kink's Motion for Summary Judgment (Doc. 181), and Defendant Faiyaz Ahmed, MD's Supplemental Motion for Summary Judgment (Doc. 186) are **GRANTED**. As no claims remain, this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

**DATED:   March 31, 2022**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**